**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN GERBA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 17 C 7235** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **NATIONAL HELLENIC MUSEUM,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

The plaintiff, John Gerba, has filed a motion to compel production of documents that the defendant, the National Hellenic Museum, has withheld under a claim of attorney-client privilege. Initially, in his motion, Mr. Gerba claims that 23 documents – emails numbered 1-8, 10-13, 20-21, 35-41, 47, and 49 in the Museum's privilege log – are being improperly withheld. [Dkt. #51, at 2]. But he only raises and develops arguments as to documents nos. 3-8, 10-11, 20-21, 35-36, 38-39, 41, 47, and 49 in his brief. [Dkt. #51, at 5, 6]. So, any arguments he might have made as to documents nos. 1-2, 12-13, 37, and 40, would be deemed waived, and those documents need not be produced. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016). But, as establishing the privilege as to those documents is, after all, the Museum's burden, *United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003); *In re Grand Jury Proceedings*, 220 F.3d 568, 571 (7th Cir.2000); *United States v. Evans*, 113 F.3d 1457, 1461 (7th Cir.1997), those entries will be reviewed along with the others.

The background of this dispute is set out in some detail in Judge Dow's summary of Mr. Gerba's allegations in his Opinion of June 21, 2018 [Dkt. #30]. Thus, it will not be revisited in depth here, except to briefly recount about the subject matter of most of these emails, a purported stalking incident involving Mr. Gerba. The Museum fired Mr. Gerba in March of 2017. [Dkt. #31, ¶. 34]. Thereafter, on June 19, 2018, the Museum's education and public programs manager, Dimitra Georgouses, went to Cook County Circuit Court and sought an order of protection against Mr. Gerba. [Dkt. #31, ¶. 36]. She alleged that after her boyfriend dropped her off at work on June 17, 2018, Mr. Gerba followed him for 18 miles. She claimed he emailed her and told her he was sending her a present, which he did. He would only have gotten her address from her employment file. She further alleged that he inappropriately texted and emailed her, trying to find ways to see her. [Dkt. #31-3, at 5-7]. The judge didn't dismiss the case, but because he did not feel there was an emergency alleged he did not issue an Order. [Dkt. #31-3, at 8-9]. Ms. Georgouses' claim came to nothing, however, as she failed to appear for her hearing, and her petition was therefore dismissed. [Dkt. #31-4].

In October of 2017, Mr. Gerba filed suit against the Museum, charging that his firing was a result of his complaints about, and refusal to go along with, some alleged financial legerdemain. He brought a claim under the Illinois Whistleblower Act, as well as claims for retaliatory discharge and defamation. That Complaint didn't survive the Museum's motion to dismiss: Mr. Gerba conceded he had no claim under the Illinois Whistleblower Act, because he never disclosed any information to the government. Judge Dow dismissed his other two claims, finding his allegations didn't support claims for defamation or retaliatory discharge. [Dkt. #30]. Mr. Gerba tried again with his claims for retaliatory discharge and defamation on July 17, 2018, filing a First Amended Complaint. It has quickly become the target of another motion to dismiss from the Museum.

As is too often the case, discovery has become contentious, especially regarding the claims of privilege. Mr. Gerba filed the first Motion to Compel on this topic in May, but it appeared that the parties hadn't fully complied with Local Rule 37.2, and thus Judge Dow had them meet and confer in an effort to reach a compromise. The Museum then amended its privilege log. That didn't do the trick, and the parties continued to dispute the applicability of the privilege, with Mr. Gerba filing his current Motion to Compel on September 26th.

## A.

First, the basics. The attorney-client privilege is "the oldest of the privileges for confidential communication know to the common law." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011). It is intended to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Yet the privilege is "in derogation of the search for the truth" and so it must be strictly confined and applied only where necessary to achieve its purpose. *Hamdan v. Indiana University Health North Hospital,* Inc., 880 F.3d 416, 421 (7th Cir. 2018); *United States v. Leonard-Allen*, 739 F.3d 948, 953 (7th Cir. 2013); *United States v. BDO Seidman, LLP*, 492 F.3d 806, 815 (7th Cir. 2007). In practice, it has become a discovery bargaining chip, with one side often making sweeping, blanket claims of privilege, while the other claims entitlement to almost everything that party has. The two sides bargain and get as far as they can – as Local Rule 37.2 requires them to do – and then leave the final call to the court.

That can be a risky move. Discovery rulings are committed to the court's very broad discretion. *Scott v. Chuhak & Tecson, P.C.*, 725 F.3d 772, 784 (7th Cir. 2013); *United States v. Frederick*, 182 F.3d 496, 499 (7th Cir. 1999). That can mean that even if one side is "right," the court can still be "right" if it rules against them. *See Chicago Reg'l Council of Carpenters Pension*

*Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018); *Infowhyse GmbH v. Fleetwood Grp.*, 2016 WL 4063168, at *2 (N.D. Ill. July 29, 2016); *Native Am. Arts, Inc. v. Peter Stone Co., U.S.A.*, 222 F. Supp. 3d 643, 648 (N.D. Ill. 2016). Indeed, in matters of discretion, "it is possible for two judges, confronted with the identical record, to come to opposite conclusions and for the appellate court to affirm both." *United States v. Williams*, 81 F.3d 1434, 1437 (7th Cir. 1996). The parties here have been unable to resolve all of their disputes have left the matter for the court's resolution.[1]

There are certain points that are important here. The first is that the Museum has submitted a privilege log – amended – and under Fed.R.Civ.P 26(b)(5), that log has to describe the nature of the documents being withheld in a manner that will allow the reader to assess the validity of the claim of privilege. Given Mr. Gerba's arguments about the log, some additional points are also important. First, the mere fact that non-attorneys might be involved in a communication or might

---

[1] The cases are not semantically consistent in invoking a standard for review in cases involving the attorney-client privilege. Most adhere to the "abuse of discretion" standard under which a party seeking review of discovery related decisions face a heavy burden in seeking to overturn the district court's order. *See e.g.,Hochberg v. Lincare, Inc.*, 334 F. App'x 831, 832 (9th Cir. 2009)(the district court did not "abuse its discretion in finding that the compelled discovery was not subject to the attorney-client privilege, and therefore Hochberg's objections were not substantially justified.");*Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co. of Wisconsin*, 131 F.R.D. 63, 71 (D.N.J. 1990)("The Court will affirm the decision of the Magistrate to compel the production of a list of documents to which the attorney-client privilege was to be claimed as within the Magistrate's discretion to fashion appropriate discovery orders.").*Compar*e *Saldana-Sanchez v. Lopez-Gerena*, 256 F.3d 1, 8 (1st Cir. 2001)(recognizing the applicability of abuse of discretion standard, but holding that an order denying or limiting discovery may not be upheld if it rests on an incorrect legal standard or a misapplication of the law to the relevant facts).

Perhaps in the end, the dispute is more semantic than real, since an abuse of discretion occurs when the court based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384,405 (1990); *Salgado by Salgado v. General Motors Corp.*, 150 F.3d 735, 739, n. 4 (7th Cir. 1998).
.

be the only ones involved does not necessarily mean their communication isn't privileged – although it often is not, of course. Communications between the client and the clients's representative or between the client's representatives can be privileged if they reflect the lawyer's thinking or are made for the purpose of eliciting the lawyer's professional advice or other legal assistance. *United States v. Leonard-Allen*, 739 F.3d 948, 953 (7th Cir. 2013); *BDO Seidman*, 492 F.3d at 815.

Second, just because an attorney happens to be a board member of the Museum doesn't mean the Museum can't consult him or her for legal advice. As such, communications made for that purpose are privileged. *See Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 618 (7th Cir. 2010)(question is whether legal advisor was acting in his capacity as legal advisor); *Matter of Grand Jury Proceeding*, 68 F.3d 193, 196 (7th Cir. 1995)("A client does not lose the privilege merely because his attorney serves a dual role."). Mr. Gerba's complaints in this regard are understandable for, as the judge in Ms. Georgouses' case said, the Museum appears to be "filled with lawyers . . . ." [Dkt. #31-3, at 5]. But, nevertheless, the privilege protects communications where board members or family members or friends of the Museum are wearing their legal counselor hats. Again, in the end, the question isn't whether an attorney is someone's cousin, it's whether the communication was made in confidence, in the connection with the provision of legal services, to an attorney, and in the context of an attorney-client relationship. *Shaffer*, 662 F.3d at 446; (7th Cir. 2011); *Sandra T.E.*, 600 F.3d at 618. With that in mind, review of the Museum's privilege log leads to the following conclusions.

### B.

**Emails 1-4** – These emails are communications from the President of the Museum to the Museum's human resources director and the Museum board member and attorney whom the Museum also consults for legal advice and members of his firm. [Dkt. #55-1]; *see Sandra T.E.*, 600

F.3d at 618 (question is whether legal advisor was acting in his capacity as legal advisor); *Matter of Grand Jury Proceeding*, 68 F.3d 193, 196 (7th Cir. 1995)("A client does not lose the privilege merely because his attorney serves a dual role."). The matter discussed is a purported incident of stalking by Mr. Gerba. That's certainly a topic that would inspire a consultation with an attorney and these documents consequently are privileged.

Email 5 – communication from Museum president to HR director said to be "forwarding/summarizing information conveyed to attorney for purpose of obtaining legal advice." Again, this is related to the stalking incident. The fact that the two individuals are non-attorneys does not mean the privilege cannot apply, as Mr. Gerba suggests. *See Roth v. Aon*, 254 F.R.D. 538, 541 (N.D. Ill. 2009)(individuals in an organizational structure are permitted to "consult with one another" about an attorney's legal advice "so that all relevant information is known before making a legal decision" without waiving the privilege."); *In re Sulfuric Acid Antitrust Litig.*, 235 F.R.D. 407, 433 (N.D. Ill. 2006)("Plaintiffs' insistence that an attorney must be involved as a participant in the communication before it can be found to reflect a client confidence or legal advice is misplaced."). This email, too, is privileged.

Emails 6-8 – These are three emails among the president of the Museum to Museum's human resources director and Museum board member and attorney whom the Museum consults for legal advice. They are all, again, from the time of and concerning the stalking incident. As such, they are privileged for the same reasons as emails 3 & 4.

Emails 10 and 11 – These are communications between the Museum's president and Museum board member and attorney regarding Mr. Gerba's claims against the Museum. These clearly concern a topic demanding legal advice and, again, as with emails 3 & 4, the attorney/board member's dual role does not destroy the privilege.

**Emails 12 & 13** – These are communications between the Museum's president and Museum board member and attorney regarding Mr. Gerba's separation agreement. The drafting of such an agreement is arguably a topic for legal consultation. These documents are privileged and need not be produced.

**Emails 20 & 21** – Email 20 is from the Museum board member/attorney to attorneys from Calamos Family Partners. Email 21 is from one of the Calamos Family Partners attorneys to the Museum board member/attorney and other Calamos Family Partners attorneys. The topic of the emails is "Gerba Separation Agreement." All we are told by way of affidavit from the Museum president, Ms. Calamos, is that Calamos Family Partners "have, at times, provided the time of their legal and financial personnel to the Museum . . . ." [Dkt. # 55-1]. "At times," however, does not mean this time and Ms. Calamos's affidavit allows for the individuals from Calamos Family Partners to have been wearing "financial hats" in these communications. Contract review can be legal or financial or both. Indeed, the Museum claims in its brief – an unsupported assertion that, unlike a sworn statement in an affidavit, is not evidence, *see I.N.S. v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984); *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 679 (7th Cir. 2016)("But saying so does not make it so . . . .") – that "Adams" is Calamos Family Partners' chief financial officer and "was intimately involved in and familiar with the financials of the Museum." [Dkt. #55, at 8]. Moreover, results of an internet search for Calamos Family Partners gives every indication that is a financial/investment firm, whether lawyers are on board or not. https://www.bloomberg.com/research/stocks/private/snapshot.asp?privcapId=23033520; https://whalewisdom.com/filer/calamos-family-partners-inc. Business or financial advice is not covered by the attorney-client privilege. *Burden-Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir. 2003). As such, the privilege log, even combined with Ms. Calamos's

affidavit fails to establish these communications are privileged and they must be produced.[2]

**Emails 35 & 36** – Email 35 is from the Museum president to the board member/attorney and the HR director, while email 36 is from an attorney at the board member/attorney's firm to the Museum president and two other attorneys from the firm. The subject of email 35, again, is the alleged stalking incident and, as with the other emails on this topic, these communications are privileged. The subject of email 36, however, is "legal advice on the maintenance of Museum security" following the stalking incident. While the Museum claims the "safety and security of employees" is a legal matter, it does not explain how, and it is certainly not self-evident. Email no. 36 must be produced.

**Emails 37-40** – These emails are exchanges among an attorney at the board member/attorney's firm, the Museum president, and the board member/attorney. As with email no. 36, the subject is Museum security and there is nothing to indicate that this is a legal matter. These emails must be produced.

**Email 41** – This is a communication from the board member/attorney to an attorney at the board member/attorney's firm and the Museum president. As with most of the emails in the log, the subject is the purported stalking incident and, again, this is a natural topic for seeking legal advice

---

[2] The Museum also asserts that the "joint defense privilege" covers these two emails. The "joint defense" or "common interest" doctrine is not a separate privilege; rather, it derives from the attorney client privilege. *Monco*, 317 F. Supp. 3d 995, 1002–03 (N.D. Ill. 2018). It is "an exception to the rule that no privilege attaches to communications between a client and an attorney in the presence of a third person." *BDO Seidman*, 492 F.3d at 815; *Monco v. Zoltek Corp*., 317 F. Supp. 3d 995, 1002–03 (N.D. Ill. 2018). The doctrine allows communications that are already privileged to be shared between parties having a "common legal interest" without a resultant waiver. The doctrine "only will apply where the parties undertake a joint effort with respect to a common legal interest, and the doctrine is limited strictly to those communications made to further an ongoing enterprise." *BDO Seidman*, 492 F.3d at 815–16 (emphasis supplied). *See also United States v. Evans*, 113 F.3d 1457, 1467 (7th Cir. 1997). Unless the party asserting the "common interest" establishes that the withheld documents were otherwise privileged, the "common interest" doctrine does not come into play. *BDO Seidman*, 492 F.3d at 816; *Monco*, *supra*. Because the Museum hasn't established these emails are privileged, the "joint defense" or "common interest" doctrine does not come into play.

and the document is privileged.

**Email 47** – This email is from the Museum's HR director to the board member/attorney and the Museum's president and, again, the topic is alleged stalking by Mr. Gerba. As with the other emails of this nature, the document is privileged.

**Email 49** – This is email from the Museum's HR director to the Museum's president regarding a litigation hold and legal advice at the time of the purported stalking incident. Again, given the participants and the subject matter, the document is privileged.

For the foregoing reasons, Mr. Gerba's motion to compel [Dkt. #51] is denied in part and granted in part insofar as the Museum is ordered to produce emails nos. 20, 21 36, 37, 38, 39, and 40 immediately.

## C.

The plaintiff has also filed a Motion to Extend, by seven days, the deadline for filing his Reply Brief in the dispute over the Museum's claims of attorney-client privilege as to certain emails. The motion claims that the plaintiff's Reply Brief was due on October 15th -- the very day plaintiff filed his motion for an extension of time -- under Local Rule 47.1(b). That rule, however, has nothing to do with Reply Briefs and instead refers to circumstances dictating the summoning of separate jury panels. The court had not set any briefing schedule and, in point of fact, had not contemplated the need for any reply brief as the matter merely requires review of the disputed entries in the defendant's privilege log and consultation of applicable case law, which the court has already completed. Notably, the plaintiff noticed his motion for presentment on October 18th , three days after he thought his reply brief was due.

Moreover, had the plaintiff had an October 15th deadline for a Reply Brief, he would have had to show good cause to gain an extension of time, see Fed.R.Civ.P. 6(b)(1), and he has not

attempted to do so.  Accordingly the plaintiff's motion [Dkt. # 58] is denied.

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 10-16-18